UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| ANTHONY CARTER, | : | |
| Plaintiff, | : | No. 3:21-cv-185 (SRU) |
| | : | |
| v. | : | |
| | : | |
| JOHN DOE, a/k/a LIEUTENANT | : | |
| DURANT, et al., | : | |
| Defendants. | : | |

**INITIAL REVIEW ORDER**

Anthony Carter ("Carter"), currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 against four defendants: John Doe a/k/a Lieutenant Durant, Warden Kenneth Butricks, Captain James Watson, and Commissioner Angel Quiros.[1] Carter contends that the defendants were deliberately indifferent to his safety in violation of the Eighth Amendment by requiring him to sleep in a bunkbed without providing him a ladder to safely access the bunk. Carter seeks damages from the defendants in their individual capacities. His complaint was received on February 16, 2021, and his motion to proceed *in forma pauperis* was granted the following day.

I.   **Standard of Review**

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil

---

[1] The case caption includes Employees of the State of Connecticut Department of Correction. After reviewing the list of parties in the body of the Complaint, it is apparent that this term is intended merely as a description of the four defendants listed above and not a fifth defendant. The Clerk is directed to terminate the Department of Correction as a defendant in this case.

complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies both when the plaintiff pays the filing fee and when he proceeds *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.     Factual Background

In July 2020, while incarcerated at Cheshire Correctional Institution, Carter received a disciplinary sanction and was put in punitive segregation. Compl. at ¶ 8. The cells in the Restrictive Housing Unit, where Carter was placed, are equipped with bunkbeds; the bunkbeds, however, are not equipped with ladders to help inmates climb safely into the top bunk. *Id.* at ¶¶ 10-11. The DOC additionally does not provide chairs or other assistive devices to help inmates attempting to climb into the top bunk. *Id.* at ¶ 12.

Initially, Carter was assigned to a cell by himself (Cell 29), and chose to sleep in the bottom bunk due to the lack of ladders. *Id* at ¶¶ 9-10. On the evening of July 23, 2020, however, Officer Doe told Carter that he was being moved from Cell 29 to Cell 14; another inmate was already assigned to that cell, and Carter would be assigned to the top bunk. *Id.* at ¶ 13. Concerned about receiving another disciplinary report, Carter complied with Officer Doe's order, but asked if he could be provided a chair to help him climb onto the top bunk. *Id.* ¶¶ 14-15. Officer Doe told Carter that he would have to wait until he could speak to a lieutenant and then ask him or her about a chair. *Id.* ¶ 15.

Later that evening, when Lieutenant Durant came to the Restrictive Housing Unit for his nightly inspection and tour, Carter explained the situation with the ladder and asked if he could be provided with a chair. *Id.* at ¶¶ 16-17. Lieutenant Durant told Carter that, despite the risk that he could fall by attempting to climb in and out of the top bunk without a chair or ladder, his request for a chair was denied. *Id.* ¶ 17. Video of the conversation between Carter and Lieutenant Durant has been preserved. *Id.* at ¶ 18.

After Lieutenant Durant denied the request for a chair, Carter asked if he could instead return to Cell 29—which remained unoccupied—so that he could sleep on the bottom bunk. *Id.* at ¶ 19. Lieutenant Durant also denied that request. *Id.* at ¶ 20.

Carter slept in the top bunk of Cell 14 that night. *Id.* at ¶ 27. Between 4 a.m. and 5 a.m. the next morning, while it was still dark in the cell, Officer John Doe arrived to serve Carter and his roommate breakfast. *Id.* at ¶ 25. Officer Doe did not turn on the cell light, which is located outside of the cell and accessible only to DOC staff. *Id.* at ¶ 24. When Carter tried to get down from the top bunk to get his breakfast tray from Officer Doe, he fell forward off the bunk, hitting

3

the wall in front of him "head first." *Id.* ¶ 27. He immediately began to experience pain in his head, neck, back and around his right eye. *Id.* at ¶ 27.

Carter was taken by ambulance to the UConn Health Center for X-Rays of his neck and spine. *Id.* at ¶ 31. Video of Carter being taken from Cell 14 to the ambulance has been preserved. *Id.* at ¶ 30. Although the X-Rays showed no abnormalities of the neck or spine, Carter has experienced back pain on a daily basis since the fall and continues to require medical treatment for the pain. *Id.* ¶¶ 32-33. He is additionally unable to stand for more than 15-20 minutes at a time or sit for more than 40 minutes without experiencing pain. *Id.* ¶ 33. He cannot lift heavy objects without experiencing back pain and cannot exercise without taking ibuprofen or other painkillers. *Id.* ¶¶ 34-35.

Since the fall, Carter has additionally been seeing flashes of red light in his right eye. *Id.* at ¶ 38. On August 7, 2020, after he told medical staff about those flashes, he was seen by a doctor for an eye examination. *Id.* ¶ 38. The doctor suspected that Carter had a detached retina and recommended that Carter be seen for a follow up appointment. *Id.* ¶ 39. Carter was seen for a follow-up appointment on October 14, 2020 and diagnosed with photopsia of the right eye. *Id.* at ¶ 40. No retinal tears were diagnosed at that time, but Carter was warned that he could be at risk of retinal detachment. *Id.* at ¶¶ 41-42.

Carter contends that Warden Butricks is aware of the lack of ladders in top bunks at in the Restrictive Housing Unit, because Warden Butricks is required to tour that unit at least twice a week; during those tours, Carter has personally seen Butricks stop, look into cells and have conversations with the inmates confined there. *Id.* at ¶¶ 50-51. Similarly, Captain Watson is required to tour the Restrictive Housing Unit daily and Carter has also seen Captain Watson look

into the cells and speak with inmates during those tours. *Id.* at ¶¶ 54-56.

He contends that the Commissioner's Office, although not necessarily Commissioner Quiros, was on notice of the lack of ladders because another inmate filed a lawsuit in state court about the issue over ten years ago. *Id.* ¶ 57.

### III.  Discussion

#### A.  Exhaustion

The Prison Litigation Reform Act of 1995 (PLRA) requires that, prior to bringing a civil suit challenging prison conditions, a plaintiff must "exhaust such administrative remedies as are available." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (citation omitted). Because Carter is incarcerated in a Connecticut facility, the administrative remedies applicable to his claims are provided by the Connecticut Administrative Directives, which are "written guidelines promulgated under the authority of Conn. Gen. Stat. § 18-81 establishing rules for the administration and operation of Connecticut correctional facilities." *Nicholson v. Murphy*, 2003 U.S. Dist. LEXIS 22165, at *18 n.2 (D. Conn. Sept. 19, 2003).

Here, Carter provides that he has exhausted his Administrative Remedies pursuant to Connecticut Administrative Directive 9.6(6)(k), which specifies the process for filing an inmate grievance relating to DOC policy or procedures. Compl. at ¶ 44. Specifically, section 9.6(6)(k) describes a "Level 2 Review" or the process by which an appeal of the disposition of a Level 1 grievance may be filed; the Level 2 Review is, with certain exceptions, the "final level of appeal for all grievances." Conn. Admin. Dir. 9.6(6)(k) *available at* https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf?la=en. Carter additionally provides an Inmate Grievance Procedure reference number. *Id.* Because Carter alleges that he has exhausted his administrative

5

remedies under section 9.6(6)(k) and because the final disposition of the appeal of Carter's grievance is not clear on this record, I will not dismiss the complaint at this stage of the proceedings for failure to exhaust.

### B. Eighth Amendment Claim

The Eighth Amendment's ban on cruel and unusual punishment encompasses the conditions of confinement imposed on incarcerated individuals in state prisons and prohibits conditions that "involve the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). There is no "static test" for determining whether a particular condition violates the Eighth Amendment; rather, conditions must be measured against "contemporary standards of decency." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (citation omitted). To state a claim for a violation of the Eighth Amendment with regard to the conditions of confinement, a plaintiff must plausibly allege both a "sufficiently serious" deprivation of "the minimal civilized measure of life's necessities" and also that in subjecting the plaintiff to the particular conditions, prison officials "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).

Conditions are sufficiently serious where "alone or in combination, [they] pose an unreasonable risk of serious damage to [an inmate's] health." *Id.* "Officials…must take reasonable measures to guarantee the safety of [] inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). There is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). Rather, "the determination of what is substantial depends on the context of the

inquiry." *Id.* (citation omitted). A court must consider "the seriousness of the potential harm and the likelihood that such injury to health will actually be caused", but also must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Deliberate indifference is a mental state akin to "subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280. To establish that a particular official acted with deliberate indifference, a plaintiff must allege that the official was both aware of a particular risk or condition and failed to take corrective action. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Although deliberate indifference is more than negligence, a prison official need not "desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices." *Salahuddin*, 467 F.3d at 280.

Here, Carter alleges that by failing to provide him a ladder or other means of safely accessing the top bunk, the defendants were deliberately indifferent to a serious risk that he would fall and injure himself. The allegation is not speculative—Carter states that while attempting to climb down off the top bunk, he fell, hit his head and sustained serious injury to his neck, eye and back. Accordingly, for purposes of initial review, Carter has set forth sufficient allegations in support of the claim that the lack of access of a ladder to climb into the top bunk posed a sufficiently serious risk to his safety to meet the objective prong of a claim under the Eighth Amendment. *See, e.g., Armstrong v. Breslin,* 2006 U.S. Dist. LEXIS 101287, at *10-12

7

(E.D.N.Y. Feb. 17, 2006) (denying motion to dismiss Eighth Amendment claim where "plaintiff clearly alleges that the lack of a ladder and the expectation that he use his locker and chair to climb onto the top bunk pose a substantial risk to his safety. In addition, he provides evidence that he suffered injuries to his back and ribs due to the alleged safety hazard."); *see also Jenkins v. Fischer,* 2010 U.S. Dist. LEXIS 142094, at *32-33 (N.D.N.Y. Sep. 8, 2010) (assuming without deciding that "ladderless bunk" could constitute Eighth Amendment violation).

Carter additionally must allege that each individual defendant was aware of the risk posed by the bunk without a ladder and failed to take action. With regard to Lieutenant Durant, Carter states that he spoke directly with Lieutenant Durant about the possibility that he might fall trying to climb into the bunk; although Lieutenant Durant acknowledged the risk that Carter could fall, he did not take steps to address the problem. That allegation is sufficient, for purposes of initial review, to establish "awareness of a substantial risk of…harm." *Salahuddin*, 467 F.3d at 280.

Defendants Quiros, Butricks and Watson, however, are officials acting in a supervisory capacity. In *Tangreti v. Bachman*, considering a § 1983 claim by a plaintiff who had been sexually abused by three correctional officers, the Second Circuit clarified the standard under which a prison official may be liable under a theory of supervisory liability. 983 F.3d 609 (2d Cir. 2020). Adopting the Supreme Court's reasoning in *Ashcroft v. Iqbal*, *supra*, the *Tangreti* Court held "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 618 (citation omitted). Accordingly, Carter must

establish that each defendant "personally knew of and disregarded an excessive risk" to his safety and cannot rely on imputed knowledge. *Id.* at 619 (citation omitted).

Carter alleges that he personally witnessed Butricks and Watson tour the Restrictive Housing Unit, look into cells containing bunks without ladders and speak to inmates confined in those cells. Although those allegations establish that both Butricks and Watson had seen the bunks in the Restrictive Housing Unit, Carter has set forth no facts to support an inference that either official was aware of the risk of falling from those bunks or drew the inference that a "substantial risk of serious harm" existed. *Farmer*, 511 U.S. at 837. Carter has therefore failed to allege that either Butricks or Watson violated the Eighth Amendment by failing to ensure that the top bunks were equipped with ladders.

With regard to Commissioner Quiros, Carter alleges only that Quiros should have been aware of the issue regarding the ladders because another inmate had filed a lawsuit in 2009, during the tenure of a former commissioner. In that case, an inmate (Edward Vines) brought a section 1983 claim against various DOC officials alleging that during the time he was incarcerated at Cheshire, the failure to provide him a ladder to access the top bunk caused him to fall and badly injure his back. *Vines v. Lantz*, 2011 Conn. Super. LEXIS 516, at *4 (Super. Ct. Mar. 7, 2011). The only reported decision from that case, however, is a ruling on a motion to dismiss which—under Connecticut law—does not permit a defendant to "challenge the sufficiency of the allegations". *Id.* at *9. The case is not reported on the Connecticut Judicial Branch website and Carter provides no information on the resolution of the case. Accordingly, despite the clear similarity between the allegations raised there and those at issue in the case at bar, the mere existence of that suit is insufficient to establish that Commissioner Quiros was

aware that the lack of ladders constituted a constitutional violation. Without additional allegations regarding personal awareness or involvement by Quiros in the failure to provide access to ladders for inmates assigned to top bunks, Carter has failed to allege that Quiros was personally aware of and disregarded a risk to his safety in violation of the Eighth Amendment.

### IV. Motion for Appointment of Counsel

Carter additionally moves for an appointment of *pro bono* counsel in this action pursuant to 28 U.S.C. § 1915. Although a district court has discretion over the decision of whether to appoint counsel, the Second Circuit has cautioned against the routine appointment of counsel without consideration of "the merits of plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989). Before appointment of counsel is even considered, a plaintiff must establish that he has been unable to obtain counsel by other means. *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986).

Here, Carter indicates that he contacted an attorney with the Inmates' Legal Aid Program and was told that attorneys from that program could assist with researching and writing motions but could not represent him in court. Carter has provided no detail with regard to why that level of representation would be inadequate at this stage of the proceedings and has therefore not established that he is unable to obtain legal assistance on his own. Moreover, because the defendants have not yet had a chance to respond to the complaint, a determination of the likelihood of success or strength of Carter's claims would be premature. Accordingly, the motion

for appointment of counsel is denied without prejudice to refiling at a later stage of the proceedings.

## CONCLUSION

All claims against Quiros, Butricks and Watson are **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1). To the extent that Cater possesses additional facts supporting the claim that either Butricks or Watson were aware of the risk the lack of access to ladders posed to Carter, he may file an amended complaint including those allegations. The case will proceed on the deliberate indifference to safety claim against defendant Durant in his individual capacity.

The Clerk is directed to terminate the Department of Correction employees as a defendant as Carter intended that language only to be descriptive of the other defendants.

Carter's motion for appointment of counsel [**Doc. No. 4**] is **DENIED** without prejudice.

The court enters the following additional orders.

(1)     **The Clerk shall** verify the current work address for defendant Durant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and this Order to Durant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)     T**he Clerk shall** send the plaintiff a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with

the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

    (10)    The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

So ordered.

Dated at Bridgeport, Connecticut, this 8th day of April 2021.

        /s/ STEFAN R. UNDERHILL
        Stefan R. Underhill
        United States District Judge